UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERICK REED,

                Petitioner,                     CASE NO. 2:08-cv-14979

v.                                   HONORABLE GERALD E. ROSEN

GREG MCQUIGGIN,

                Respondent.
_____/

**OPINION AND ORDER**
**DENYING PETITION FOR WRIT OF HABEAS CORPUS**
**AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

This is a habeas case filed under 28 U.S.C. § 2254.  Petitioner Erick Reed is a state inmate currently incarcerated by the Michigan Department of Corrections at the West Shoreline Correctional Facility in Muskegon Heights, Michigan.  He filed this habeas petition challenging his 2004 conviction for possession with intent to deliver a controlled substance, cocaine, in the amount of more than 45 grams but less than 1,000 grams, after a jury trial in Wayne County Circuit Court.  He was sentenced to eleven to thirty years in prison for the charged offense.

In his *pro se* pleadings, Petitioner raises eleven claims why his conviction and sentence are unconstitutional, including, improper jury instructions, a violation of the Fourth Amendment, prosecutorial misconduct during opening statement and closing argument, lack of subject-matter jurisdiction in the trial court, judicial bias, a violation of the Confrontation Clause, the effectiveness of trial counsel, *ex parte* communications with the jury, cumulative-error effect, improper sentencing, and the effectiveness of appellate counsel.  Respondent has filed an answer to the petition, contending that Petitioner's claims either lack merit or are procedurally defaulted. The Court agrees and finds that Petitioner's conviction and sentence are constitutionally sound.

Therefore, the Court will deny the petition.  The Court also will decline to issue Petitioner a certificate of appealability.

I.

The Michigan Court of Appeals summarized the underlying facts of this case, which are presumed correct on habeas review.  *See Monroe v. Smith*, 197 F. Supp. 2d 753, 758 (E.D. Mich. 2001), *aff'd*, 41 F. App'x 730 (6th Cir. 2002) (citations omitted).  The Court of Appeals stated:

> Javan Lee ("Lee"), is defendant's cousin.  On February 27, 2003, defendant phoned Lee, at his home, to confirm Lee's residential address and informed Lee he would be sending a birthday gift for defendant's sister in care of Lee at his home.  Lee provided defendant with his address.  Defendant told Lee that the gift was a radio.

> Defendant phoned Lee again on February 28, 2003, to confirm Lee's mailing address.  Defendant phoned later that same day to inform Lee that a package would arrive on Saturday.  On Saturday, the day anticipated for delivery of the package, defendant phoned Lee three additional times checking on whether the package had been received.  Lee verified to defendant, on the third phone call, that his package had been received.

> Between the second and third phone calls by defendant to Lee on Saturday, defendant's package was delivered to Lee's home.  Unbeknownst to Lee, the AirBorne Express delivery person that brought the package to his house was, in actuality, an undercover narcotics officer, Michael Patti ("Patti"), of the Detroit Police Department.  The package received at Lee's home had been mailed from Oakland, California, and the return address on the package indicated it came from Reed Brothers, Inc., 1212 Clayton Road, Oakland, California.

> Before shipment, while still in California, the package was intercepted and detected to contain narcotics by a trained canine used by the Oakland California Parcel and Addiction Team.  The Oakland Team opened the package and confirmed that it contained narcotics, repackaged it, contacted local police and shipped it to police in Canton, Michigan, for a "controlled delivery."  Upon receipt by police in Michigan, the box was re-opened.  A cassette recorder contained within the package was removed and disassembled, revealing a hidden brick of cocaine.

> While a raid crew was ready and waiting outside Lee's home with a search warrant, Patti donned the garb of an AirBorne Express delivery person and presented the package to Lee at his home.  After leaving the premises, Patti went

2

to a staging area to change so that he could join members of the raid team. While
Patti was at the staging area, he was informed by another officer that a vehicle,
with Illinois license plates, had pulled up outside Lee's home and a man, later
identified as defendant, had run up to the home's entrance.

Lee reported returning to bed after delivery of the package, only to be
disturbed almost immediately by the doorbell. Lee found defendant at his front
door. Upon letting him into the home, Lee stated to defendant, "if you were
coming here, you could have brought . . . the radio yourself." At this point,
believing someone other than police had been watching Lee's home for the
package delivery, police immediately raided the home.

Upon entry, police located Lee between the front stairwell and living room
of his residence. Defendant was in the bathroom. The package was near the front
stairwell, "undisturbed" and unopened. In searching defendant, police looked in
his wallet, found and confiscated a cash receipt from a Radio Shack in Oakland,
California, dated February 27, 2003, at 5:43 p.m. for a cassette recorder that
matched the make and model containing the cocaine within the delivered
package.

Lee gave police a statement at the scene, denying knowledge of the
package contents and indicating he had merely accepted the package at the
request of defendant. Police checked Lee's home phone caller identification and
verified the number, dates and times of calls received from a cell phone number
that coincided with Lee's description of his contacts with defendant. In addition,
a cell phone, with the number corresponding to that located on Lee's caller
identification was taken from defendant's person during the raid.

Neither Lee nor defendant were arrested at the scene. On November 14,
2003, defendant was arrested and charged with one count of possession of a
controlled substance (cocaine) with intent to deliver, more than 450 grams but
less than one thousand grams. At trial, defendant was convicted as charged and
now appeals as of right.

*People v. Reed*, No. 256305, 2005 WL 2758421, at *1-2 (Mich. Ct. App. Oct. 25, 2005).

Following his conviction and sentence, Petitioner filed an application for leave to

appeal with the Michigan Court of Appeals, raising claims concerning judicial bias, prosecutorial

misconduct during opening statement and closing argument, error in subject-matter jurisdiction,

improper jury instructions, and a Fourth Amendment violation. The Court of Appeals affirmed

3

his conviction and sentence. *Reed*, 2005 WL 2758421, at *7.

Petitioner then filed an application for leave to appeal the Court of Appeals's decision with the Michigan Supreme Court, raising the same claims. The Supreme Court denied the application on April 28, 2006. *People v. Reed*, 474 Mich. 1127, 712 N.W.2d 455 (2006).

On December 14, 2006, Petitioner filed a motion for relief from judgment with the state trial court, raising claims concerning the Confrontation Clause, *ex parte* jury communications, cumulative-error effect, improper sentencing, and the effectiveness of appellate counsel. The trial court denied the motion. *People v. Reed*, No. 04-2336-01 (Wayne Cnty. Cir. Ct. Feb. 7, 2007). Petitioner then filed applications for leave to appeal with the Michigan Court of Appeals and the Michigan Supreme Court, which were denied. *People v. Reed*, No. 279601 (Mich. Ct. App. Feb. 20, 2008); *People v. Reed*, 482 Mich. 973, 754 N.W.2d 898 (2008).

Petitioner did not file a petition for writ of certiorari with the United States Supreme Court. Rather, he filed this habeas petition on December 1, 2008, signed and dated November 21, 2008. As noted, Respondent filed an answer to the petition arguing that it should be denied because some of his claims are barred by procedural default.

Respondent argues that several claims are procedurally defaulted because Petitioner either failed to preserve the claims in the state trial court or raised them for the first time in his post-conviction motion in the state trial court. Respondent asserts that the following claims are defaulted because Petitioner failed to preserve them in the state trial court: claim III–prosecutorial misconduct; claim IV–lack of subject-matter jurisdiction in the trial court; and claim VI–violation of the Confrontation Clause.

Under a long line of Supreme Court cases, an adequate and independent finding of

4

procedural default by the state courts will also bar federal habeas review of a state conviction, unless the habeas petitioner can show cause for the procedural default and prejudice attributable thereto. *See Murray v. Carrier*, 477 U.S. 478, 485 (1986); *see also Harrington v. Richter*, ---U.S. at ---, ---, 131 S.Ct. 770, 787 (2011) (same) (citations omitted). The doctrine of procedural default is applicable where a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent." *See Brooks v. Tennessee*, 626 F.3d 878, 890 (6th Cir. 2010). The state may assert a procedural default when the last, reasoned opinion of the state courts clearly relies on a procedural bar in refusing to consider a claim. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991). If a petitioner is guilty of a procedural default in the state courts, the federal habeas court will only entertain the defaulted issue if petitioner bears the burden of showing cause and prejudice or can show actual innocence. *Murray*, 477 U.S. at 485.

In the present case, all of the prerequisites to a finding of procedural default are present. The state Court of Appeals expressly found that Petitioner's challenge to prosecutorial misconduct, lack of subject-matter jurisdiction, and violation of the Confrontation Clause had not been preserved for review, because of Petitioner's failure to make a contemporaneous objection at trial. The fact that the court went on to review the issue under a plain-error or manifest-injustice standard does not constitute a waiver of state procedural default rules. *See Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011) (where the state court declares itself limited to plain error review because of the petitioner's failure to raise an issue, the state procedural bar has been established and the cause and prejudice test applies); *Paprocki v. Foltz*, 869 F.2d 281, 284-285 (6th Cir. 1989) (limited review of an issue to prevent manifest injustice

5

does not constitute a waiver of the procedural default).  Consequently, in the usual case, Petitioner would have the burden of showing cause and prejudice or actual innocence to overcome the default.

However, both the Supreme Court and the Sixth Circuit have indicated that the district court has discretion to ignore a procedural default and proceed directly to the merits of an apparently defaulted claim, when to do so would be more expeditious than an analysis of the complicated procedural default question.  *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997); *Mahdi v. Bagley*, 522 F.3d 631, 635 (6th Cir. 2008).  In the present case, Petitioner's claims are indisputably meritless, so analysis of the complicated procedural default issue is unnecessary.

Likewise, Respondent argues that the following claims are defaulted because Petitioner raised them for the first time in his post-conviction motion: claim VI–violation of the Confrontation Clause; claim VIII–*ex parte* communications with the jury; claim IX–cumulative-error effect; claim X–improper sentencing; and claim XI–ineffective assistance of appellate counsel on appeal.

In this case, the Michigan Court of Appeals and the Michigan Supreme Court relied on Michigan Court Rule 6.508(D) when they denied Petitioner's applications for leave to appeal on collateral review of his conviction.  However, the United States Court of Appeals for the Sixth Circuit has held that "[b]rief orders citing Michigan Court Rule 6.508(D) are not explained orders invoking a procedural bar."  *Guilmette v. Howes*, 624 F.3d 286, 289 (6th Cir. 2010).  This Court therefore must look to the last-reasoned state court opinion to determine the basis for the state court's rejection of Petitioner's claims.  *Id.* at 291.

6

The last-reasoned opinion was the trial court's decision on Petitioner's motion for relief from judgment. Because that court adjudicated Petitioner's federal claims on the merits, this Court finds that Petitioner's claims are not procedurally defaulted.

Even if the claims were procedurally defaulted, as noted, procedural default is not a jurisdictional limitation. *Pudelski v. Wilson*, 576 F.3d 595, 606 (6th Cir. 2009), *cert. denied*, --- U.S. ----, 130 S.Ct. 3274 (2010) (citing *Cain v. Redman*, 947 F.2d 817, 820 (6th Cir. 1991)). The Court therefore proceeds to address the merits of Petitioner's claims, using the following standard of review.

## II.

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme

Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, --- U.S. ---, ---, 130 S.Ct. 1855, 1862 (2010) ((quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam )). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, --- U.S. at ---, 131 S.Ct. at 786 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).

Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* "[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, --- U.S. at ---, 131 S.Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves

8

the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)) (Stevens, J., concurring in judgment)).

Indeed, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford*, 537 U.S. at 24 (citations omitted). Thus, in order to obtain habeas relief in federal court, a prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, --- U.S. at ---, 131 S.Ct. at 786-87.

III.

A.

In his first claim, Petitioner alleges that he was denied a fair trial when the trial court failed to instruct the jury with respect to the intent necessary to convict him of possession with intent to deliver. Petitioner argues that the jury was not aware that the prosecution had to show "that the offense of possession with intent to deliver is a specific intent crime." Petition, 8.

Generally, challenges to jury instructions are not cognizable on federal habeas review unless the instruction "so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (citation and quotation marks omitted). It is not enough to show that an instruction was incorrect under state law. *Id.* at 71-72. "To

9

warrant habeas relief, jury instructions must not only have been erroneous, but also, taken as a whole, so infirm that they rendered the entire trial fundamentally unfair." *Doan v. Carter*, 548 F.3d 449, 455 (6th Cir. 2008) (citations and quotation marks omitted). "When a court makes an error in instructing the jury, the proper inquiry is 'whether there is a reasonable likelihood that the jury' applied the instruction 'in an unconstitutional manner.'" *Id.* at 455 (quoting *Victor v. Nebraska*, 511 U.S. 1, 6 (1994) (citing *Estelle*, 502 U.S. at 72)).

The trial court instructed the jury as follows:

> And to prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt.
>
> First, that the defendant knowingly possessed a controlled substance. Secondly, that the defendant intended to deliver this substance to someone else, third, the substance possessed was cocaine, and the defendant knew it was.

Trial Tr. vol. IV, 83 May 26, 2004.

Petitioner never requested the instruction in question and assented to the instructions without objection. Thus, he waived his right to challenge the instruction on appeal. However, in addressing this claim for plain error, the Court of Appeals found that the trial court properly instructed the jury.

> Defendant acknowledges that the instruction that he claims was erroneously omitted was not specifically requested by his counsel and that, despite having the opportunity to hear the instructions provided to the jury, counsel assented to the instructions without objection. The trial court provided the jury with very explicit instructions on the elements of the crime charged. The trial court specifically informed the jury that each element of the charged crime must be proven by the prosecutor "beyond a reasonable doubt." Within the instructions provided by the trial court, it was stated that it was necessary to show that "defendant knowingly possessed a controlled substance." The trial court stated that it must be shown that "defendant intended to deliver the substance," and that the substance was cocaine and that defendant "knew it was." Further, when discussing possession, the trial court instructed the jury that "it is not enough if the defendant merely knew about the substance," because control of the

10

substance must be shown.

Because defendant failed to preserve the alleged instructional error through objection, this issue is reviewed for plain error affecting his substantial rights. A review of the lower court record reveals no error or prejudice arising from the instructions given by the trial court. The trial court clearly and completely explained to the jury all elements comprising the crime charged. The delineated elements sufficiently explained to the jury the necessary level of intent required for conviction. Failure to present a separate instruction on specific intent does not comprise error. When all of the instructions are reviewed, in their entirety, the trial court provided the jury with sufficient information on all elements of the offense to protect defendant's rights.

*Reed*, 2005 WL 2758421, at *2-3 (citation omitted).

Where a state appeals court finds that the instruction given by the trial court accurately reflected state law, this Court must defer to that determination. *Seymour*, 224 F.3d at 558. In this case, the Michigan Court of Appeals determined that the jury instruction accurately reflected the intent necessary for the charged offense. That conclusion was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. Habeas relief is not warranted.

B.

Petitioner alleges in his second habeas claim that his Fourth Amendment rights were violated when the police improperly searched the contents of his wallet.

"[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial." *Stone v. Powell*, 428 U.S. 465, 494-95 (1976) (footnotes omitted). The Sixth Circuit utilizes a two-step

11

analysis to determine whether a defendant was given a full and fair opportunity to litigate a

Fourth Amendment claim in state court:

> First, the court must determine whether the state procedural mechanism, in the
> abstract, presents the opportunity to raise a fourth amendment claim.  Second, the
> court must determine whether presentation of the claim was in fact frustrated
> because of a failure of that mechanism.

*Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000) (internal quotations and citation

omitted).

      "Michigan has a procedural mechanism which presents an adequate opportunity for a

criminal defendant to raise a Fourth Amendment claim."  *Robinson v. Jackson*, 366 F. Supp. 2d

524, 527 (E.D. Mich. 2005) (citations omitted).  That procedural mechanism is a motion to

suppress, ordinarily filed before trial.  *See People v. Ferguson*, 376 Mich. 90, 135 N.W.2d 357

(1965) (describing the availability of a pre-trial motion to suppress).  Michigan appellate courts

also provide a mechanism to review Fourth Amendment claims when it appears the evidence in

question affected the outcome of the trial.  *Kelley v. Jackson*, 353 F. Supp. 2d 887, 893 (E.D.

Mich. 2005) (Court of Appeals concluded that Petitioner had failed to properly raise the issue,

reviewed the claim for plain error, and denied relief).  Because Michigan provides a procedural

mechanism for raising a Fourth Amendment claim, Petitioner may only demonstrate entitlement

to relief if he establishes that presentation of his claim was frustrated by a failure of that

mechanism.

      Here, Petitioner did not object to the validity of the search warrant in the trial court.

Rather, he first asserted a Fourth Amendment claim at the appellate level.  On appeal, the Court

of Appeals held that the issue was not preserved for review, however, the court reviewed

Petitioner's claim under the manifest injustice standard, and denied relief.  Thus, "it is clear that

the Michigan courts were cognizant of Petitioner's Fourth Amendment claim and that he

received all the process he was due." *See Kelley*, 353 F. Supp. 2d at 893.  Petitioner's claim is

not cognizable and he is not entitled to relief.

However, in *Kimmelman v. Morrison*, 477 U.S. 365, 383 (1986), the Supreme Court held,

as an exception to *Stone*, 428 U.S. 465, that a claim of ineffective assistance of counsel can

permissibly include a claim that trial counsel failed to competently litigate an issue under the

Fourth Amendment.  *See also Joshua v. DeWitt*, 341 F.3d 430, 437 (6th Cir. 2003) (same).

Because Petitioner asserts in his seventh habeas claim that his trial counsel was ineffective for

failing to file a motion to suppress the evidence under the Fourth Amendment, the Court will

review Petitioner's ineffective-assistance-of-counsel claim in that regard.

To prevail, Petitioner must demonstrate that the state court's conclusion regarding his

Fourth-Amendment claim was contrary to, or an unreasonable application of, *Strickland v.*

*Washington*, 466 U.S. 668 (1984).  *Cathron v. Jones*, 190 F. Supp. 2d 990, 996 (E.D. Mich.

2002).  "*Strickland* established a two-prong test for claims of ineffective assistance of counsel:

the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient

performance prejudiced the defense." *Id.* (citing *Strickland*, 466 U.S. at 687).  With respect to

the first prong, "judicial scrutiny of counsel's performance must be highly deferential."

*Strickland*, 466 U.S. at 689.  The habeas court "should recognize that counsel is strongly

presumed to have rendered adequate assistance and made all significant decisions in the exercise

of reasonable professional judgment." *Id.* at 690.  Finally, the petitioner bears the burden of

overcoming the presumption that the challenged actions "might be considered sound trial

13

strategy." *Id.* at 689 (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

Further, "[w]here defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman*, 477 U.S. at 375; *see also Young v. Renico*, 346 F. App'x 53, 57 (6th Cir. 2009) (same). Thus, "[Fourth Amendment and Sixth Amendment ineffective counsel] claims have separate identities and reflect different constitutional values ." *Id.*

The Michigan Court of Appeals addressed this claim stating:

> The police had a warrant to search the location where defendant was, immediately following the controlled delivery of a package known to contain cocaine. Defendant was identified with a last name consistent with those on the mailing label on the package containing the cocaine. Defendant's arrival within minutes after delivery of the package and statements by the homeowner to police, linking defendant to the package containing the cocaine, were sufficient to establish probable cause. "Probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of criminal activity." Defendant had a very clear connection to the package of illicit drugs, which were known by police to be on the premises. Based on the circumstances existent at the time, the search of defendant's personal effects was authorized and the evidence procured was not subject to suppression.

*Reed*, 2005 WL 2758421, at *3 (citations omitted).

Here, Petitioner cannot demonstrate that he was prejudiced as a result of trial counsel's failure to file a motion to suppress the evidence in question. As the Court of Appeals determined, the police had a warrant to search the location where Petitioner was immediately after the controlled delivery of the package containing the cocaine. His last name was consistent with that on the mailing label on the package, he arrived within minutes of the delivery, and he had been frequently calling the property owner, his cousin, regarding the package. The police

14

knew that the package contained illicit drugs, and Petitioner had a clear connection to the package. The search of Petitioner's personal effects was authorized, in that the police had sufficient probable cause for the search. Thus, any efforts by counsel to suppress evidence from the search would have failed.

Because Petitioner failed to show that a motion to suppress the evidence would have been meritorious, under *Kimmelman*, he cannot show that he was prejudiced and his claim must fail. *See Kaufman v. Michigan Parole Bd.*, No. 05-73933, 2007 WL 1562786, at *13 (E.D. Mich. May 29, 2007) (denying habeas relief on ineffective counsel grounds because Fourth Amendment claim lacked merit). Thus, Petitioner's ineffective-assistance-of-counsel claim, with respect to his Fourth-Amendment claim, also is meritless.

## C.

In his next habeas claim, Petitioner contends that he was denied due process because of the repeated acts of prosecutorial misconduct, specifically the prosecutor's comments during opening statement and closing argument. The Court of Appeals dealt with these claims when addressing Petitioner's insufficient-evidence claim and rejected the claims after conducting a plain-error review because Petitioner did not make a contemporaneous objection at trial. The Court of Appeals found no prosecutorial misconduct that amounted to plain error or deprived Petitioner of substantial rights.

> To the extent that defendant's assertion of error comprises a claim of prosecutorial misconduct it is unpreserved, and this Court will review the alleged improprieties for plain error affecting defendant's substantial rights. This Court reviews de novo challenges to the sufficiency of the evidence, taking the evidence in the light most favorable to the prosecutor and determining whether a rational trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt.

15

A prosecutor may argue the evidence and all reasonable inferences that arise from the evidence as its relates to the theory of the case. The prosecutor's comments during opening and closing arguments do not vary from the evidence presented during trial. Defendant fails to demonstrate or support his assertion that the statements of the prosecutor did not fully comport with the standards and status of the law and served to mislead the jury. The trial court properly and specifically instructed the jury that comments or questions by the attorneys did not constitute evidence and that only the trial court's instructions on the law were relevant for their deliberations, thus effectively curing any potential prejudice. To the extent that defendant asserts prosecutorial misconduct, he has failed to demonstrate a plain error affecting his substantial rights.

*Reed*, 2005 WL 2758421, at *5 (citations omitted).

It is well-established that prosecutors must "'refrain from improper methods calculated to produce a wrongful conviction.'" *United States v. Young*, 470 U.S. 1, 7 (1985) (quoting *Berger v. United States*, 295 U.S. 78, 88 (1935)). However, "[c]laims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). Prosecutorial misconduct may warrant habeas-corpus relief only if the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "To constitute a denial of due process, the misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial." *Byrd v. Collins*, 209 F.3d 486, 529-30 (6th Cir. 2000) (quoting *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997)). "The Court must examine 'the fairness

of the trial, not the culpability of the prosecutor.'" *Pritchett*, 117 F.3d at 964 (quoting *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993)).

16

The Court first considers whether the prosecutor's conduct or remarks were improper. *Slagle v. Bagley*, 457 F.3d 501, 515-16 (6th Cir. 2006). If they were, the Court then must decide whether the improper acts were so flagrant as to warrant relief. *Id.* at 516. The Sixth Circuit applies a four-factor test to any inappropriate prosecutorial conduct to determine whether it was flagrant: "(1) whether the evidence against the defendant was strong, (2) whether the conduct of the prosecution tended to mislead the jury or prejudice the defendant; (3) whether the conduct or remarks were isolated or extensive; and (4) whether the remarks were made deliberately or accidentally." *Id.* (citation omitted).

Petitioner asserts that the prosecutor committed misconduct by vouching for his guilt, telling the jury that they could find him guilty of possession with intent to deliver in opening statement, bolstering Lee's credibility in closing argument, and misrepresenting the evidence in closing argument, arguing that he was found in possession of the shipping form.

A prosecutor may not express a personal opinion concerning the guilt of a defendant or the credibility of trial witnesses, because such personal assurances of guilt or vouching for the veracity of witnesses by the prosecutor "exceeds the legitimate advocates' role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof." *Caldwell v. Russell*, 181 F.3d 731, 737 (6th Cir. 1999) (internal citations omitted). "[G]enerally, improper vouching involves either blunt comments, or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." *See United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999) (internal citations omitted).

17

During his opening statement, the prosecutor told the jury that the testimony would show that Petitioner did not have drugs "stuffed in his pants pocket" but that he did have a "form of constructive possession over those narcotics," and that the police officer would probably testify that the drugs found would be divided "off into smaller packets and sold" at a profit.  Trial Tr. vol. I, 4, 6, 9 May 20, 2004.  And, during his closing argument, the prosecutor also argued that Petitioner had possession of the drugs, that he possessed the shipping receipt, and that he was somehow connected to Reed Brothers, Inc., which was the name on the shipping label of the package that contained the drugs.  Trial Tr. vol. IV, 20-21, 24, 26 May 26, 2004.

The Court of Appeals found that the prosecutor's comments during opening statement and closing argument were not improper in that they did not vary from the evidence presented during trial.  The evidence against Petitioner was strong.  The prosecutor did not intentionally or deliberately mislead the jury.  Trial counsel is free to argue reasonable inferences from the evidence.  *Young*, 470 U.S. at 9.  Moreover, "a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial."  *Young*, 470 U.S. at 11.

Taken in context, and for the reasons stated by the Court of Appeals, the Court concludes that the prosecutor's remarks were not improper.  *Byrd*, 209 F.3d at 537.  Furthermore, the trial court properly and specifically instructed the jury that comments or questions by the attorneys did not constitute evidence.  *Reed*, 2005 WL 2758421, at *5.

Against that backdrop, the Court concludes that Petitioner is not entitled to habeas relief with respect to his prosecutorial-misconduct claims.

18

D.

In his fourth habeas claim, Petitioner alleges that the trial court lacked subject-matter jurisdiction over him because there was no "magistrate return" filed with the court.

It is well established that "federal habeas corpus relief does not lie for errors of state law." *Estelle*, 502 U.S. at 67 (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)); *see also Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law."). Petitioner's claim that the Michigan courts lacked jurisdiction over his criminal case raises an issue of state law and therefore is not cognizable in federal habeas review. *See Samel v. Jabe*, 918 F.2d 958 (6th Cir. 1990). Nor is a habeas petitioner entitled to habeas relief based upon an alleged violation of the Michigan constitution. *Doyle v. Scutt*, 347 F.Supp.2d 474, 485 (E.D. Mich. 2004). Federal due process does not require state officials to follow their own procedural statutes and rules. *Sweeton v. Brown*, 27 F.3d 1162, 1165 (6th Cir. 1994).

The Court of Appeals examined this claim for plain error because it was not preserved for appellate review as Petitioner failed to raise the issue at trial, finding that the record demonstrated that there were three documents in the lower court that were filed "verifying the transfer of the case and bind over of defendant to the circuit court following preliminary hearings conducted in the district court." *Reed*, 2005 WL 2758421, at *6.

Accordingly, this Court is bound by that decision. This claim does not present a question that is cognizable in this habeas-corpus proceeding.

E.

In his fifth habeas claim, Petitioner alleges that the trial judge was argumentative and

19

biased toward defense counsel and thus he was deprived of a fair and impartial trial.

Specifically, Petitioner states that the trial court "repeatedly conveyed throughout the trial via his

comments that he was impermissibly biased. The court's comments and personal attacks

revealed that the court was not neutral or impartial." Petition, 26.

The Due Process Clause of the Fourteenth Amendment requires a fair trial in a fair

tribunal before a judge with no actual bias against the defendant or an interest in the outcome of

the case. *See Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997). Judicial misconduct claims

involve two types of cases. One group addresses charges of "judicial bias" stemming from a trial

judge's "personal interest" in the outcome of a case, usually derived from some extrajudicial

association with the cause or with one of the parties. *See In re Murchison*, 349 U.S. 133, 136

(1955). The second group concerns charges of "judicial misconduct" in which the trial judge is

accused of conducting the proceedings in a manner which strongly suggests that the judge

disbelieves the defense or favors the prosecution. *See Liteky v. United States*, 510 U.S. 540,

555-56 (1994); *see also Alley v. Bell*, 307 F.3d 380, 386 (6th Cir. 2002) (same).

To violate a defendant's right to a fair proceeding, the judge's intervention in the case

must be significant and detrimental to the defendant to a substantial degree. *See McBee v.

Grant*, 763 F.2d 811, 818 (6th Cir. 1985). Adverse rulings themselves are not sufficient to

establish bias or prejudice. *See Liteky*, 510 U.S. at 555 ("judicial rulings alone almost never

constitute a valid basis for a bias or partiality motion"); *United States v. Hynes*, 467 F.3d 951,

960 (6th Cir. 2006) (citing *Liteky*). In reviewing a judicial bias claim, a federal habeas court

should presume that the trial judge properly discharged his or her official duties. *See Johnson v.

Warren*, 344 F. Supp. 2d 1081, 1093 (E.D. Mich. 2004).

20

During defense counsel's cross-examination of Lee, counsel asked Lee if he feared being

charged with a crime which carried a thirty-year penalty.  The prosecutor objected and the trial

court told counsel to stay away from the penalty aspect of the question.  The following colloquy

took place:

> THE COURT:  Stay away from penalties, don't argue with me.
> [DEFENSE COUNSEL]:  Excuse me, Your Honor, can I make a record?
> THE COURT:  Don't argue with me!
> [DEFENSE COUNSEL]:  Can I make a record?  Can I make a record?
> THE COURT:  Don't' argue with me!
> [DEFENSE COUNSEL]:  I can't make a record?
> THE COURT:  Don't' argue with me, follow my instructions!

Trial Tr. vol. I, 58 May 20, 2004.

When defense counsel continued his questioning, again discussing the penalty of such

crimes, the trial court admonished him once again, referring to his questioning as ridiculous.

Counsel became irate and asked for a mistrial.  Outside the presence of the jury, another

encounter occurred, at which time, the trial court held counsel in contempt.

The Court of Appeals in addressing this claim stated:

> Viewing the record as a whole, the trial court's isolated comments did not
> deprive defendant of a fair and impartial trial.  Suggestions by defendant that the
> trial court's conduct evidenced prejudice or bias are unsupported.  The lower
> court record is replete with instances of the trial court permitting defendant's
> counsel to proceed with questioning of witnesses without interruption or
> comment. Following the one incident that led to the ruling holding defendant's
> counsel in contempt, the trial court took great effort to shield the jury from
> information regarding the reasons for delay of trial.  The trial court reviewed case
> law presented by defense counsel in support of his position to permit reference to
> penalties in questioning a witness, which ultimately led to the trial court's
> reversal and correction of its prior ruling for the jury.
>
> Judicial comments occurring during a trial that are critical, disapproving
> or hostile to an attorney, the parties or a case generally cannot be relied upon to
> demonstrate partiality.  Displays of annoyance, anger, frustration, impatience or
> dissatisfaction, if deemed within the bounds of what individuals may on occasion

21

display, cannot establish partiality. The trial court did not comment on the evidence or testimony presented. It did not criticize defendant or witnesses or question their credibility. The comments asserted by defendant's counsel to be improper were the direct result of counsel's failure to abide by rulings of the trial court and counsel's insistence upon continuing to challenge those rulings, in the presence of the jury, while engaging in verbal conduct that was indisputably disrespectful of the court. The trial court's instructions to the jury regarding the presumption of innocence and emphasizing that rulings by the trial court are not evidence, were sufficient to cure any possible prejudicial effect attributable to the trial court's comments.

*Reed*, 2005 WL 2758421, at *4 (citations omitted).

Contrary to Petitioner's position, the record reveals repeated instances where the trial court permitted counsel to question witnesses without interruption or comment. And, in regard to the exchange that took place during the cross-examination of witness Lee, the record established that trial counsel was disrespectful to the court and was determined not to abide by the court's ruling. Out of the presence of the jury, as defense counsel continued to interrupt the court, he was held in contempt and taken into custody. The jury was informed that there was a slight delay in the proceedings and that they would be excused until the following Monday morning. When counsel failed to appear in court on Monday morning, the court informed the jury that trial could not resume that day but that the jury "needn't concern yourselves with the reasons for these problems right now." Trial Tr. vol. II, 9 May 24, 2004. At that time, the trial court asked Petitioner if he wanted a new attorney. Petitioner declined. Trial counsel returned to the court the following morning and trial resumed.

This Court finds that Petitioner cannot show that the exchange described above resulted in bias against the defense. He does not allege that the trial court unfairly ruled against the defense with respect to evidentiary issues or failed to sustain or grant objections that were made.

Rather, when the trial court reconsidered whether defense counsel had improperly cross-examined Lee, the court corrected its prior ruling in front of the jury.  Also, the record does not reveal that there was any bias demonstrated against the defense concerning the issue for which counsel was held in contempt.  Rather, the record shows that counsel was able to continue to represent Petitioner effectively, challenging rulings, questioning witnesses, and advocating a plausible defense in the face of strong evidence against Petitioner.

The actions or comments of the trial judge do not reflect unfair prejudice or "a predisposition 'so extreme as to display clear inability to render fair judgment.'"  *Johnson v. Bagley*, 544 F.3d 592, 597 (6th Cir. 2008) (citations omitted).  The court exerted its authority correctly when faced with counsel's intransigence on rulings, but allowed counsel to continue to assist Petitioner.  Petitioner has not shown that the trial judge was personally biased against him, engaged in misconduct, or otherwise deprived him of a fundamentally fair proceeding.  Habeas relief is not warranted on this claim.

F.

Petitioner next asserts that he was denied his constitutional right to confrontation when testimonial hearsay evidence was repeatedly allowed to be given.  During trial, the officer in charge of the case, Michael Patti, testified that the package in question was detected by the Oakland California Police Department, and that a drug-detection dog alerted them to the package containing narcotics.  Detective Patti also testified that the police actually opened the package to make sure that it did contain narcotics.  He said he was informed by the police that the source location of the package was Air Bourne Express.  Defense counsel failed to object to the testimony.

23

As an initial matter, the Court notes that alleged trial court errors in the application of state evidentiary law are generally noncognizable as grounds for federal habeas relief. *See Estelle*, 502 U.S. at 67-68. Only when an evidentiary ruling is "so egregious that it results in a denial of fundamental fairness," may it violate due process and warrant habeas relief. *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). To the extent that Petitioner asserts that the trial court erred in admitting the statements under the Michigan Rules of Evidence, he merely alleges a violation of state law which does not entitle him to federal habeas relief. *See Wheeler v. Jones*, 59 F. App'x 23, 28 (6th Cir. 2003). State courts are the final arbiters of state law and the federal courts will not intervene in such matters. *See Lewis*, 497 U.S. at 780; *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987).

The Court finds that Petitioner's claim that the trial court violated his right of confrontation when it admitted Detective Patti's testimony as non-hearsay evidence raises only an error of state law that is noncognizable in federal habeas review. *See David v. Lavinge*, 190 F. Supp. 2d 974, 981-82 (E.D. Mich. 2002). Therefore, to this extent, Petitioner's argument is not a cognizable habeas claim.

To the extent Petitioner is alleging a Confrontation Clause violation, the Court finds his contention lacks merit. The Supreme Court has held that the Confrontation Clause applies only to out-of-court statements that are "testimonial" in nature. *See Whorton v. Bockting*, 549 U.S. 406, 419-20 (2007) (explaining that, under *Crawford v. Washington*, 541 U.S. 36 (2004), the Confrontation Clause has no application to non-testimonial out-of-court statements); *Davis v. Washington*, 547 U.S. 813, 821 (2006) ("It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay

24

evidence, is not subject to the Confrontation Clause."). *Crawford* was decided on March 8, 2004. Petitioner was convicted on May 26, 2004. *Crawford* therefore applies to Petitioner's case.

The *Crawford* Court did not define "testimonial," but provided examples of those statements at the core of the definition, including prior testimony at a preliminary hearing, previous trial, or grand jury proceeding, as well as responses made during police interrogations. *Crawford*, 541 U.S. at 51-52. Additionally, the *Davis* Court has indicated that while statements made during a police interrogation, the purpose of which is "to establish or prove past events potentially relevant to later criminal prosecution," are testimonial in nature, statements "made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency" are "nontestimonial." *Davis*, 547 U.S. at 822. Furthermore, evidence that is provided merely by way of background or is offered only to explain how certain events came to pass or why law enforcement officers took the actions that they did is not offered for the truth of the matter asserted, and thus cannot trigger a Confrontation Clause violation. *See United States v. Warman,* 578 F.3d 320, 346 (6th Cir. 2009); *cert. den.* 130 S. Ct. 1103 (2010) (*quoting United States v. Cromer*, 389 F.3d 662, 676 (6th Cir. 2004)).

The trial court, in addressing this claim in Petitioner's post-conviction motion, first found that because the testimony was not objected to at trial, it was waived. Second, the trial court found it questionable whether "the quoted testimony was actually inadmissible hearsay. The testimony was offered to explain the witness's state of mind and motive for his own actions, rather than as an assertion of fact." *Reed*, No. 04-2336-01, at *2. The Court agrees.

25

In this case, Detective Patti referred to what the Oakland California Police Department told him for the purpose of identifying factual information on which the police in Michigan relied in eliminating other suspects as part of their investigation. The statements were made as background to explain how certain events came to pass or why the police officers took the actions they did and not to prove the truth of the matter asserted. *Warman*, 578 F.3d at 346. Thus, the statements were not used for an improper hearsay purpose. Further, "[Petitioner] is not entitled to habeas relief unless he can establish that th[e] trial error resulted in actual prejudice." *Ford v. Curtis*, 277 F.3d 806, 809 (6th Cir. 2002) (affirming denial of habeas relief because admission of hearsay statements was harmless error) (internal citations omitted). Here, the statements in question did not have a "harmful or injurious effect on the fundamental fairness of the trial," *id.* at 810-11, because there was sufficient evidence showing that Petitioner constructively possessed the cocaine. Habeas relief is not warranted with respect to this claim.

G.

In habeas claim seven, Petitioner asserts that trial counsel was ineffective for failing to object to the prosecutor's misconduct, failing to move to suppress evidence seized from his belongings, engaging in conflict with the trial court, and failing to move for a mistrial. The Court addressed Petitioner's second argument in section III, B, *supra*, and concluded that counsel was not ineffective for failing to move to suppress the evidence because Petitioner failed to demonstrate that filing such a motion would have been meritorious. And, because the Court already determined that the prosecutor's comments did not deprive Petitioner of a fundamentally fair trial, Petitioner is unable to establish that he was prejudiced by counsel's failure to object to the alleged prosecutorial misconduct. See section III, C, *supra*.

26

With respect to the remaining ineffective-assistance-of-counsel claims, engaging in conflict with the trial court and failing to move for a mistrial, the Court finds that counsel was not ineffective.

As noted in section III, B, *supra*, the Supreme Court has established a two-prong test for determining whether a habeas petitioner has received the ineffective assistance of counsel. See discussion section III, B, *supra* (under *Strickland*, Petitioner must prove that counsel's performance was deficient and must establish that counsel's deficient performance prejudiced the defense). *Strickland*, 466 U.S. at 687. Petitioner also must establish that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment; counsel's errors must have been so serious that they deprived Petitioner of a fair trial or appeal. *Id.* The Supreme Court has recently confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, --- U.S. at ---, 131 S.Ct. at 788 (internal and end citations omitted).

The last court to issue a reasoned decision regarding Petitioner's judicial-bias claim, the Michigan Court of Appeals, stated:

> Following the trial court's holding of defendant's counsel in contempt, defendant was given the opportunity to continue the trial with alternative counsel, but declined to do so. Transcripts indicate that defendant's counsel did seek intervention from the Chief Judge, which was refused. The motion for new trial brought by defendant's counsel, asserting bias toward him by the trial court regarding an unrelated case, was denied. Defendant asserts that his counsel was aware of the alleged basis throughout the trial. However, in making the motion

for a new trial defendant's counsel alleged the motion was based on a transcript received just prior to the sentencing hearing.  In contradiction to defendant's assertion that his counsel was ineffective, the lower court record demonstrates that defense counsel was especially persistent in advocating on defendant's behalf.

To be deemed ineffective, counsel must commit errors that are so serious that he was not performing as the "counsel" guaranteed by federal and state constitutions.  Deficient performance by defendant's counsel must have resulted in prejudice.  To demonstrate prejudice, defendant must show a reasonable probability that but for counsel's mistakes, the results of the proceeding would have been different.  Even if trial had proceeded smoothly, given the evidence presented it is extremely unlikely that defendant would have been acquitted.  As a result, defendant has failed to demonstrate that the alleged deficient performance by his trial counsel impacted or affected the outcome of the trial.

*Reed*, 2005 WL 2758421, at *7 (citations omitted).

With respect to Petitioner's claim that trial counsel was ineffective because he engaged in conflict with the trial court, Petitioner has failed to demonstrate how he was prejudiced as a result.  Petitioner had the opportunity at trial to request new counsel, but he specifically informed the court that he wished to continue with his counsel.  When a petitioner invites an error in state court, he or she may not seek habeas-corpus relief for that error.  *Fields v. Bagley*, 275 F.3d 478 (6th Cir. 2001).  Moreover, as the Court of Appeals held, the trial record demonstrates that trial counsel was especially persistent in advocating on Petitioner's behalf.

In regard to Petitioner's allegation that trial counsel was ineffective for failing to move for a mistrial because of that incident, his argument is without merit.  The trial record specifically indicates that as defense counsel was engaging in his exchange with the trial court, counsel stated, "I make a motion for a mistrial."  Trial Tr. vol. I, 60 May 20, 2004.  Also, the Court of Appeals found that defense counsel did seek intervention from the chief judge after the incident took place, but the request was denied, and defense counsel filed a motion for a new

28

trial in which he asserted bias toward him by the court in an unrelated case, but the motion was denied. *People v. Reed*, No. 04-2336-01 (Wayne Cnty. Cir. Ct. Oct. 20, 2006).

With that, the Court concludes that the record evidence completely undercuts Petitioner's claim that trial counsel failed to seek a mistrial or a new trial. He is not entitled to habeas relief with respect to these claims.

### H.

In his eighth habeas claim, Petitioner alleges that Detective Patti had *ex parte* communications with the jury and violated his constitutional rights to due process. At the end of the trial proceedings, defense counsel informed the trial court that Petitioner's wife had observed Detective Patti talking to members of the jury outside the courtroom, which Detective Patti admitted. He told the court that he had simply asked the jury if it was done for the day and if they would be coming back the next day. The next day, the trial court continued its inquiry and noted that his staff also had witnessed Detective Patti communicate with another juror when the firearm alarm went off. The trial court reprimanded Detective Patti, telling him that communication with the jury was strictly impermissible. The trial court did not declare a mistrial.

The Sixth Amendment guarantees the right to a trial by an impartial jury. *Duncan v. Louisiana*, 391 U.S. 145, 147-149 (1968). The constitutional standard of fairness requires that a defendant in a criminal case have a panel of impartial, "indifferent" jurors. *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). The question of whether a trial court has seated a fair and impartial jury is a factual one involving an assessment of credibility. *Gall v. Parker*, 231 F.3d 265, 308 (6th Cir. 2000) (citing *Patton v. Yount*, 467 U.S. 1025, 1038 (1984)). A state trial court's finding on the

29

impartiality of a juror or a jury is a factual finding that is presumed correct under § 2254, unless a habeas petitioner can prove otherwise by convincing evidence. *Gall*, 231 F.3d at 334.

The state trial court in addressing this claim in Petitioner's post-conviction motion found that "[t]here was nothing in the revealed exchange between the officer and the jurors that suggested that defendant's right to a fair and untainted jury was compromised in any way." *Reed*, No. 04-2336-01, at *2. The Court agrees. Since there is no indication that the jurors were unfair or biased, Petitioner is not entitled to habeas relief on this claim.

## I.

Petitioner's ninth habeas claim alleges that the cumulative effect of the trial errors deprived him of a fair trial. Petitioner claims that, even if any given issue, standing alone, does not constitute a constitutional error, the cumulative effect of several errors can constitute sufficient prejudice to warrant reversal. The trial court denied the claim on the ground that there could be no cumulative harm to Petitioner's due process rights where there was no merit in any of Petitioner's arguments. *Reed*, No. 04-2336-01, at *2. This Court agrees.

Furthermore, "[t]he Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002). Constitutional errors that would not individually support habeas relief simply cannot be cumulated to support habeas relief. *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005) (citing

*Scott v. Elo*, 302 F.3d 598, 607 (6th Cir. 2002), and *Lorraine*, 291 F.3d at 447). As such, Petitioner is not entitled to habeas relief based on a cumulative-error claim.

## J.

In his tenth habeas claim, Petitioner alleged that the trial judge was biased against him and failed to allow him to allocute, and therefore, he is entitled to resentencing.  Petitioner also claims that the trial judge failed to articulate its reasons for the imposition of his sentence.

Regarding Petitioner's judicial-bias claim, the Court addressed that issue in section III, E, *supra*.  The Court found that the trial judge was not biased.

With respect to Petitioner's claim that the trial judge denied him his right to a meaningful allocution, it is well settled that "[t]here is no constitutional right to allocution under the United States Constitution."  *Cooey v. Coyle*, 289 F.3d 882, 912 (6th Cir. 2002) (quoting *Pasquarille v. United States*, 130 F.3d 1220, 1223 (6th Cir. 1997).  Further, a federal habeas court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle*, 502 U.S. at 68.  Moreover, the Supreme Court has recognized that "a sentencing judge's failure to ask a defendant if he had anything to say, although a violation of [Federal Rule of Criminal Procedure] 32(a)(1)(C), was not an error of constitutional dimension and could not support a writ of habeas corpus."  *See Boardman v. Estelle*, 957 F.2d 1523, 1526 (9th Cir. 1992), *cert. denied*, 506 U.S. 904(1962) (citing *Hill v. United States*, 368 U.S. 424 (1962)).

The trial court addressed this claim in its opinion and order denying Petitioner's post-conviction motion, finding:

> Nonetheless, it is worth noting that defendant was sentenced at the bottom of the applicable sentencing guidelines, a clear indication of lack of bias on the part of the trial judge and it was a sentence that requires no explanation.  The record also reveals that defendant was given an opportunity to allocute but in doing so he began repeating himself and re-litigating the case and after being admonished not to do so he continued.  While a defendant has a right to allocute, he does not have a right to allocute endlessly.

*Reed*, No. 04-2336-01, at *3.

31

The Court finds that the trial court did not err in its decision with respect to this claim. Habeas relief is not warranted.

With respect to Petitioner's sentencing claim, "a State's alleged failure to adhere to its own sentencing procedures does not present a Federal issue cognizable in a habeas proceeding." *Wilson v. Burt*, No. 07-cv-11420, 2010 WL 259070, at *7 (E.D. Mich. Jan 20, 2010), *cert. denied*, 449 U.S. 996 (1980) (citing *Jones v. Estelle*, 622 F.2d 124, 126 (5th Cir.)). Where a sentence is imposed within the State statutory limits, no federal question is raised. *Id.* (citing *Wright v. Maryland*, 429 F.2d 1101, 1105 (4th Cir. 1970)). In this case, Petitioner was sentenced at the bottom of the sentencing guidelines. His sentence was within the state statutory limits. Habeas relief is not warranted.

## K.

Petitioner's final habeas claim alleges ineffective assistance of appellate counsel. Petitioner maintains that his appellate attorney was ineffective for not raising habeas claims six, seven, eight, nine, and ten in his direct appeal from his conviction. Petitioner raised this issue in his motion for relief from judgment in the trial court, which held that appellate counsel was not ineffective by failing to make meritless arguments. This Court agrees.

Petitioner was not entitled to compel his appointed attorney to raise all nonfrivolous claims on appeal if counsel, as a matter of professional judgment, elected not to raise the claims. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). In fact, "the process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail . . . is the hallmark of effective appellate advocacy." *O'Sullivan v. Boerckel*, 526 U.S. 838, 858 (1999) (quotation marks and citations omitted).

32

The Court has reviewed and has found no merit in the claims that Petitioner contends his appellate attorney should have raised on appeal. "[A]ppellate counsel cannot be ineffective for a failure to raise an issue that lacks merit," *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001), and there is no reasonable probability that, but for appellate counsel's failure to raise the claims, Petitioner would have prevailed on appeal. Habeas relief is not warranted.

IV.

A petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction. 28 U.S.C. §§ 2253(c)(1)(A), (B). A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37.

The Court concludes that jurists of reason would not find the Court's assessment of the constitutional claims debatable or wrong. The Court thus declines to issue Petitioner a certificate of appealability.

For the reasons stated, IT IS ORDERED that the "Petition for Writ of Habeas Corpus"

33

[Dkt. # 1] is DENIED.

IT IS FURTHER ORDERED that the Court DECLINES to issue Petitioner a certificate of appealability.


s/Gerald E. Rosen_____
Chief Judge, United States District Court

Dated: February 29, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 1, 2012, by electronic mail and upon Erick Reed, #299415, West Shoreline Correctional Facility, 2500 S. Sheridan Drive, Muskegon Heights, MI 49444 (Petitioner's current address according to OTIS) by ordinary mail.

s/Ruth A. Gunther_____
Case Manager